IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 109,079

DANITRA Y. CAIN,
*Appellant*,

v.

KENDYL L. JACOX,
*Appellee.*

SYLLABUS BY THE COURT

1.

Whether a claim is barred by the doctrine of res judicata is a question of law over which appellate courts exercise unlimited review.

2.

The doctrine of res judicata is a common-law rule of equity grounded in both notions of justice and in sound public policy, each of which demands that a party not be vexed with litigation twice on the same cause. Before the doctrine of res judicata will bar a successive suit, the following four elements must be met:  (a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits.

3.

When applying the res judicata rule, courts must be mindful of the equitable principles animating the doctrine. Thus, courts must consider the substance of both the first and subsequent action and not merely their procedural form. The doctrine may be liberally applied, but it requires a flexible and common-sense construction in order to vindicate the fundamental goals embedded in the requirements of justice and sound

1

public policy. This framework neither favors nor disfavors the application of the rule in any particular case. It merely requires that before the doctrine is either invoked or rejected, a court must conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand.

4.

Parties are the same for res judicata purposes when they are in privity with one another. There is no generally prevailing definition of privity which can be automatically applied to all cases. A determination of the question as to who are privies requires careful examination of the circumstances of each case as it arises.

5.

As with the res judicata doctrine of which it is a part, privity is an equitable determination grounded in principles of fundamental fairness and sound public policy. Before privity can be invoked to satisfy the same party element of res judicata, there must be a showing that the parties in the two actions are really and substantially in interest the same.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 22, 2013. Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed July 24, 2015. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*David P. Troup*, of Weary Davis, L.C., of Junction City, argued the cause and was on the briefs for appellant.

*Blake Johnson*, of Oleen Law Firm, of Manhattan, argued the cause, and *Bentson Oleen*, of same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: Danitra Cain appeals from the denial of her motion to recover postjudgment interest on unpaid child support judgments. The district court denied the motion holding that the doctrine of res judicata barred Cain's claim. The Court of Appeals affirmed. But we hold that because Cain was neither a party in a prior proceeding nor in privity with a party in a prior proceeding, the doctrine of res judicata does not bar her claim. We therefore reverse the contrary rulings by the district court and Court of Appeals and remand the case to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Danitra Cain gave birth to a daughter. Within a few months of the child's birth, the Kansas Department of Social and Rehabilitation Services (SRS) commenced this action in Riley County District Court. The court found that Kendyl Jacox was the child's father and ordered him to pay child support. Soon after, having finished his collegiate football career at Kansas State University, Jacox began what would become a successful and financially rewarding career in the National Football League. As the years went by, Jacox's child support obligations rose alongside his income. Unfortunately, however, Jacox proved to be an unreliable—though wealthy—father.

By 2008, SRS notified the district court that it would be providing child support enforcement services for Cain. SRS claimed Jacox owed $173,654.52 in back payments, and the agency sought and was granted an income withholding order in that amount. Garnishment proved difficult, if not impossible. Making further efforts to collect the arrearages on behalf of Cain, SRS sought to enforce the district court's order by

3

registering it in Texas (where Jacox was living) pursuant to the Uniform Interstate Family Support Act (UIFSA), Tex. Family Code Ann. § 159.101 *et seq*. (Vernon 2014).

Texas took no action until 2011 when the Texas Attorney General, as that state's child support enforcement agency under UIFSA, filed a notice of registration of a foreign support order and sought its enforcement. The Texas Attorney General requested judgment in the amount of $133,110.10 (representing the principal child support arrearage as of April 1, 2011) with no accrued interest. The amount requested was based on a spreadsheet provided by SRS listing both Jacox's monthly support obligations and any support payments he had made. The spreadsheet did not include any calculation for interest accrued.

The Texas district court held a hearing at which Jacox appeared and was represented by counsel. Cain was present without counsel, though she was not formally a party to the action. Following the hearing, the court determined that as of June 1, 2011, Jacox was in arrears in the amount of $136,562.10 and entered judgment in that amount. Cain signed the order with the notation from the court that Cain had agreed to the order "only as to form." No appeal from this order was taken, and Jacox paid the judgment in its entirety in 2011.

The following March, back in Kansas, Cain sought an order from the Riley County District Court determining the amount of interest owed on the arrearages as of October 14, 2011. Jacox asserted a res judicata defense. In both her pleadings and testimony to the district court, Cain alleged that the Texas Attorney General would not seek to enforce interest on the arrearages unless that amount was first reduced to a judgment certain by the Riley County District Court. Jacox did not dispute this fact but argued that pursuant to UIFSA, the Texas court had the authority to make the interest calculation itself. As such, Jacox claimed that the four elements of res judicata had been

4

met and that Cain's claim for interest was barred. See *In re Tax Appeal of Fleet*, 293 Kan. 768, Syl. ¶ 2, 272 P.3d 583 (2012) (before the doctrine of res judicata can apply, the following four elements must be met: "[a] the same claim; [b] the same parties; [c] claims that were or could have been raised; and [d] a final judgment on the merits").

The district court agreed with Jacox and found that Cain's claim for interest was barred due to the res judicata effect of the Texas judgment. On appeal, a panel of our Court of Appeals agreed. *Cain v. Jacox*, No. 109,079, 2013 WL 6164666, at *8 (Kan. App. 2013) (unpublished opinion), *rev. granted* 300 Kan. 1103 (2014). Cain now appeals to this court, and we exercise jurisdiction pursuant to K.S.A. 60-2101(b).

DISCUSSION

We exercise plenary review over the only question presented by this appeal— whether the judgment of the Texas court should be given res judicata effect to bar Cain's claim for interest in Riley County District Court. See *In re Tax Appeal of Fleet*, 293 Kan. at 777. The doctrine of res judicata is a common-law rule of equity grounded in both notions of justice and in sound public policy, each of which demands that a party not be vexed with litigation twice on the same cause. Kansas has long recognized the basic parameters of the rule that still obtain today.

As early as 1883, Justice Brewer, writing for this court, held:

"It is not only familiar law but manifest justice that a man should not be vexed twice with the same litigation. Doubtless there are many exceptions to the letter of this rule, but wherever the exceptions have been recognized, they have been based upon what seemed necessary for the full protection of the rights of the parties. But when a question has been once fully litigated, and every opportunity given to either party to present his case and to have any supposed errors in the lower corrected by review in the highest court, it would

5

seem an abuse of the rights of a litigant to compel him to enter upon a second litigation of the same question." *Comm'rs of Wilson Co. v. McIntosh*, 30 Kan. 234, 236-37, 1 P. 572 (1883).

As the rule is framed today, before the doctrine of res judicata will bar a successive suit, the following four elements must be met: "(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits." *In re Tax Appeal of Fleet*, 293 Kan. 768, Syl. ¶ 2.

When applying the rule, Kansas courts must be mindful of the equitable principles animating the doctrine. Thus, courts must consider the substance of both the first and subsequent action and not merely their procedural form. See *Comm'rs of Wilson Co.*, 30 Kan. at 238 ("We think there is a growing disposition to enlarge the scope of the doctrine of *res judicata*, and to place more regard on the substance of the decision than on the form of the proceedings."). The doctrine may be liberally applied, but it requires a flexible and common-sense construction in order to vindicate its fundamental goals which are embedded in the requirements of justice and sound public policy. See, *e.g.*, *In re Estate of Reed*, 236 Kan. 514, 519, 693 P.2d 1156 (1985) ("This rule is one of public policy. . . . The doctrine of res judicata is, therefore, to be given a liberal application but not applied so rigidly as to defeat the ends of justice."); *Swigart v. Knox*, 165 Kan. 410, 423, 196 P.2d 246 (1948) (Cowan, J., dissenting) ("The application of the doctrine of res judicata is not inflexible. It is a rule of convenience and necessity but, like all such rules, is not to be applied so rigidly as to defeat the ends of justice."); *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (the doctrine of res judicata "must be given a flexible, common-sense construction that recognizes the reality of the situation"). This framework neither favors nor disfavors the application of the rule in any particular case. It merely requires that before the doctrine is either invoked or rejected, a court must conduct a case-by-case analysis that moves beyond a rigid and technical application to

6

consider the fundamental purposes of the rule in light of the real substance of the case at hand.

With this framework in mind, we now turn to the lower courts' application of res judicata to bar Cain's claim for postjudgment interest in Riley County District Court. The parties spend the bulk of their arguments contesting the power of the Texas court under UIFSA—or its lack thereof—to calculate and order the payment of interest on the child support arrearages accumulated by Jacox over the many years of his sporadic compliance. Indeed, this issue is at the heart of the panel's decision below as well.

Cain argues that the Texas court did not have the authority to calculate and order interest on the arrearages and that, to the extent the Texas court did this, it impermissibly modified the Kansas support order in violation of UIFSA. As such, Cain claims both that the "same claim" and the "claim that could have been raised" elements of res judicata are missing. Jacox argues that the Texas court did have the ability pursuant to UIFSA to calculate and order interest without impermissibly modifying the Kansas support order. Jacox contends that the Texas Attorney General asked the Texas court to include interest in its enforcement order and that the court's failure to do so was either the result of an agreement between Cain and Jacox or was a mistake that was not appealed. As such, Jacox asserts that the claim in Texas included the question of postjudgment interest on the arrearages and that it either was or could have been asserted.

The Court of Appeals panel agreed with Jacox, holding:

"While the Texas court, at the invitation of Kansas SRS and the Texas Attorney General, erred in its calculation of the total amount due under the Kansas child support order, this error was not a modification of the Kansas support order. The Texas court had the power to make this calculation, and Cain could have revisited the issue of

7

postjudgment interest in postjudgment proceedings before the Texas court or by an
appeal.

    . . . .

    "Here, Cain could have sought postjudgment relief in the Texas court or appealed
the erroneous judgment, but she failed to do so, a lapse which very well may have been
caused not by her own neglect but by incorrect advice she obtained in the Texas
proceeding. The unfortunate consequence for her is that the Texas judgment was a final
judgment and the issue of postjudgment interest could not be relitigated later in Riley
County." *Cain*, 2013 WL 6164666, at *8.

But we need not consider the twin issues of whether (1) the registration via UIFSA
of a Kansas support order in Texas represents the same claim for res judicata purposes as
a preexisting child support action in a Kansas court with continuing jurisdiction that
straddles the Texas enforcement action; or (2) whether Texas had the authority under
UIFSA to calculate and order interest on child support arrearages based on the
registration of a Kansas support order that has not reduced the interest to a specific
amount. Instead, we can and do resolve the only issue before us on the grounds that Cain
and the Texas Attorney General were not the "same party" for res judicata purposes.

The district court's discussion of the "same parties" element of res judicata was
perfunctory and conclusory. The court merely stated: "Petitioner and respondent herein
appeared in the Texas proceeding. Clearly the same parties." The Court of Appeals
engaged in a more substantive consideration of this element. The panel recognized that
Cain was *not* a formal party to the Texas action because it was brought and litigated by
the Texas Attorney General as the support enforcement agency of that state under
UIFSA. The panel did note, however, that Cain was actually present in Texas during
those proceedings and was afforded the opportunity by the Texas court to approve the
order, which she chose to do as to "form only." *Cain*, 2013 WL 6164666, at *2, *5.

8

The Court of Appeals next properly considered whether Cain and the Texas Attorney General were in privity. Parties are the "same" for res judicata purposes when they are in privity with one another. See *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 (1971). The panel held:

> "The interest the Texas Attorney General was pursuing was Cain's entitlement to the unpaid amounts due on the Kansas court's support order. There was an identity of interests between the Texas Attorney General and Cain such that the two were in privity with one another. Thus, the parties were in essence the same in the Texas and later Riley County proceedings." *Cain*, 2013 WL 6164666, at *6.

We disagree.

"There is no generally prevailing definition of 'privity' which can be automatically applied to all cases. A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises." *Goetz v. Board of Trustees*, 203 Kan. 340, 350-51, 454 P.2d 481 (1969). As with the doctrine to which it is a part, privity is an equitable determination grounded in principles of fundamental fairness and sound public policy. See *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 458, 980 P.2d 1022 (1999) ("Whether a party is in privity with another . . . is a policy decision."); *St. Paul Fire & Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 18-19, 974 P.2d 611 (1999) ("[P]rivity is an equitable concept and equitable principles should apply. We conclude there can be no privity between persons unless the result can be defended on principles of fundamental fairness in a due process sense."). Before privity can be invoked to satisfy the "same party" element of res judicata, there must be a showing that "the parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).

9

To further his argument that Cain and the Texas Attorney General were pursuing the same interests, Jacox points out that the Texas Attorney General asked the Texas court to "enter judgment for all support arrearage and accrued interest as of the hearing date." This is an important fact, but it is not conclusive. As stated above, we must look past form to substance. The reality is that in child support enforcement proceedings such as these, the pleadings are generally pro forma and include a variety of boilerplate statements. The *substance* of the Texas Attorney General's filing was found in the exhibits attached to and referenced in the filings. The exhibits included the Riley Court District Court support orders and the spreadsheet prepared by SRS showing the arrearages.

But as a function of Kansas law, neither of the Kansas documents comprising the substance of the claim made by the Texas Attorney General asserted that Jacox owed any postjudgment interest. While a Kansas district court has the authority to reduce interest owed on child support arrearages to an amount certain and to enter judgment in that amount, the actual legal obligation to pay postjudgment interest accrues and attaches as a matter of law without the need for a specific court order. See K.S.A. 16-204(d). But Kansas child support enforcement agencies (SRS in this case) are prohibited from making the interest calculation themselves. Instead, the scope of SRS's enforcement services pertaining to postjudgment interest is "limited to enforcement of a lump sum previously determined by a tribunal of competent jurisdiction." See K.A.R. 30-44-5(a).

Therefore, because the postjudgment interest due and owing on the child support arrearages had never been reduced to an amount certain by the Riley County District Court, SRS was legally unable to pursue the recovery of that amount in Texas during the enforcement proceeding pursuant to UIFSA. And because the substance of the Texas Attorney General's claim in the Texas court was limited by the recovery sought by SRS, the Texas Attorney General had no interest or stake in recovering or enforcing any

10

postjudgment interest amounts owed under Kansas law. Cain, on the other hand, clearly did have such a stake. Given this, we must conclude that Cain and the Texas Attorney General did not share an interest that was "really and substantially" the same. There was no privity and the "same party" element of the res judicata test is not met, thus ending our analysis. We reverse the lower courts' findings that Cain's claims are barred by the doctrine of res judicata and remand this matter to the district court for further proceedings.

Finally, we take up and grant Cain's motion for attorney fees. Cain's appellate attorney fees are allowable at the discretion of this court when the district court would have authority to award such fees. Supreme Court Rule 7.07(b)(1) (2014 Kan. Ct. R. Annot. 70). District courts are granted authority to award reasonable attorney fees in such cases. K.S.A. 2014 Supp. 23-2216(a). We have considered Cain's motion, attached affidavit, and note that Jacox did not file a reply in opposition to the motion. We conclude that, because Cain's appellate attorney fees were occasioned entirely by Jacox's failure to comply with support orders at the time they were made, the award of appellate attorney fees is justified—especially considering the aggravating factor that Jacox clearly had the means to comply. We further conclude that the amount Cain requests is reasonable and should be allowed. Cain's motion for appellate attorney fees and costs is therefore granted.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed, and the matter is remanded to the district court for a calculation of the postjudgment interest owed on the child support arrearages.