NOT DESIGNATED FOR PUBLICATION

No. 114,302

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLEDITH BOHANON,
*Appellant*,

v.

SAM CLINE, *et al*.,
*Appellees.*

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed September 2, 2016. Reversed and remanded with directions.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Jon D. Graves*, of Kansas Department of Corrections, for appellees.

Before ATCHESON, P.J., LEBEN, J., and HEBERT, S.J.

LEBEN, J.: Prison inmates have a constitutional right to due process in prison if some constitutionally protected interest is at stake. If an inmate believes he or she has been denied due process in that situation, the inmate can bring a habeas corpus petition seeking court review.

Cledith Bohanon, an inmate at the Hutchinson Correctional Facility, filed a habeas corpus petition under K.S.A. 2015 Supp. 60-1501, asking the court to review the decision of prison officials to place him in a special confinement section called the Enhanced Management Unit. Bohanon appealed this placement through the usual prison appeals

process, but both the warden at the Hutchinson Correctional Facility and the Secretary of Corrections refused to change his placement in the Enhanced Management Unit. That's when Bohanon filed his habeas petition in the Reno County District Court. But that court dismissed Bohanon's petition without an evidentiary hearing, saying that Bohanon hadn't shown that confining him in the Enhanced Management Unit put a constitutionally protected interest at stake.

When we review the dismissal of a habeas petition without an evidentiary hearing, we do so independently, with no required deference to the district court's decision. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009). Dismissal is appropriate only if the court can tell—based just on the allegations in the petition—that the petitioner isn't entitled to any relief from the court. 289 Kan. at 648-49.

The first question a court must address is whether the inmate has shown that a constitutionally protected interest is at stake. *Hardaway v. Larned Correctional Facility*, 44 Kan. App. 2d 504, 504-05, 238 P.3d 328 (2010). The inmate must show either shocking and intolerable conduct or continuing mistreatment that would violate a person's constitutional rights. *Johnson*, 289 Kan. at 648.

Our record doesn't give us a lot of information about the specific conditions of Bohanon's confinement. He was apparently placed in administrative segregation in April 2014 while an investigation of prison activities took place. At that time, Bohanon was in the Lansing Correctional Facility. In May 2014, he was transferred to the Hutchinson Correctional Facility and placed in its Enhanced Management Unit, apparently based on the allegations made while he was at Lansing. At some point, Bohanon appealed the decision to put him in the Enhanced Management Unit, but that appeal was denied, prompting the habeas petition.

We don't know much about the specific allegations that led to Bohanon's placement or the specific conditions of his confinement. Prison responses to his appeal said that he had "been identified as High Profile as a result of suspected or confirmed behavior deemed inappropriate" and had been placed in the Enhanced Management Unit based on that "High Profile" classification. The warden's response to Bohanon's administrative appeal gives us a brief, but vague, description of the unit where he was held: "The Enhanced Management Unit (EMU) was established to provide for security and control of offenders who must be separated from the general population in regards to certain privileges, but who have been determined to be in need of lesser control than is afforded in Administrative Segregation."

Inmates may end up segregated from most of the prison population either for disciplinary reasons—punishment for some prison infraction—or for administrative reasons, as is apparently the case with Bohanon. Prison officials have concluded, based on his "High Profile" status, that he can't be placed in the general prison population.

Our courts have long held that a disciplinary segregation doesn't rise to the level of a constitutionally protected interest. *Hardaway*, 44 Kan. App. 2d at 505. Indeed, in 1995, the United States Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), that a prisoner had no protected liberty interest when a state prison placed the inmate in segregated confinement for 30 days as a disciplinary measure. An inmate's liberty is obviously restrained—it's a prison, after all. Thus, even when the inmate was placed in segregated confinement as a disciplinary measure, the *Sandin* Court said that the inmate had no constitutionally protected interest that could be pursued in a habeas action unless the confinement "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. A 30-day disciplinary segregation didn't impose such a hardship. 515 U.S. at 487.

But our Supreme Court recently indicated in *Jamerson v. Heimgartner*, 304 Kan. 678, 685-86, 372 P.3d 1236 (2016), that the *duration* of a segregated prison placement may affect whether an inmate has a constitutionally protected interest and may lead to a different result than the one in *Sandin*. The court noted that a nonpunitive, administrative segregation could extend "for periods of years, or even decades," 304 Kan. at 681, and that "[i]n extreme cases, courts may deem duration the dominant factor" in determining whether an inmate has a constitutionally protected liberty interest. 304 Kan. at 685.

Factually, the *Jamerson* case was somewhat unusual: it involved an inmate who had been in administrative segregation but was placed back in the general prison population before the Kansas Supreme Court could address the case. Accordingly, the court said that the guidance it provided was "judicial dictum"—not essential to the decision or binding on the courts, but to be "given considerable weight and [to] provide[] guidance to lower courts." 304 Kan. 678, Syl. ¶ 7. The *Sandin* test remains the general standard—the court must determine whether "the restraint is atypical and a significant hardship on the inmate in relation to the ordinary incidents of prison life." 304 Kan. 678, Syl. ¶ 4. The *Jamerson* court specified that several factors—including duration of segregated placement—must be considered in determining whether the inmate has a protected liberty interest:

> "The duration of segregated placement is a factor that courts must consider in determining whether an inmate has demonstrated a liberty interest infraction. Duration must be considered together with other factors, such as the frequency of visitation, access to exercise or work programs, the degree of supervision, and how those conditions compare with the conditions of inmates in the general prison population. In extreme cases, duration may be the dominant factor for consideration." 304 Kan. 678, Syl. ¶ 5.

With these standards in mind, we return to Bohanon's case. We do not know how long he has been in some sort of segregated placement, but it has certainly been far more than 30 days. In addition to the segregated placements that began in 2014, we note that

4

Bohanon also filed a habeas petition challenging his placement in an Enhanced Management Unit in 2012. That petition was dismissed for failure to show a constitutionally protected interest, a decision we affirmed in *Bohanon v. Heimgartner*, No. 109,023, 2013 WL 3970213 (Kan. App. 2013) (unpublished opinion). At that time, well before *Jamerson*, our court simply said that "if administrative segregation is the condition of confinement complained of, that placement in and of itself does not give rise to a due process claim." 2013 WL 3970213, at *3 (citing *Sandin*).

Based upon *Jamerson*, however, Bohanon's petition cannot be summarily dismissed. The duration of his segregated placement must be considered, along with the other conditions of his confinement.

Our Supreme Court also told us in *Jamerson* how it would handle a case in which dismissal was inappropriate but it did not have enough facts to apply the multiple-factor test it announced:

> "In cases where such relevant factors were not developed below, the usual remedy would be to remand for factual findings and corrected application of the law to those findings. Such a remedy would be particularly important in the present case, because the record simply does not contain a factual basis for evaluating whether the conditions of Jamerson's placement were 'atypical' and constituted a 'significant hardship in relation to the ordinary incidents of prison life.'" 304 Kan. at 686.

Here, we have little information on Bohanon's confinement, and, unlike in *Jamerson*, no party has advised us that Bohanon's placement has changed. So we will remand to the district court for an evidentiary hearing and application of the *Jamerson* factors.

We should note that we are aware that Bohanon has filed previous habeas petitions raising similar claims. Ordinarily, he might be prevented from filing another action making the same claim under the principle of res judicata, which generally prevents a

5

person from raising a particular claim after the court has already ruled on it. See *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013). But since duration of an inmate's segregated placement is a key factor in determining whether an inmate has a constitutionally protected interest—and Bohanon's claims have never been considered under the *Jamerson* factors—we do not apply res judicata here. See *Cain v. Jacox*, 302 Kan. 431, Syl. ¶ 3, 354 P.3d 1196 (2015) (holding that res judicata must be applied in a flexible and common-sense way, not in a manner that is "a rigid and technical").

The district court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.