NOT DESIGNATED FOR PUBLICATION

No. 118,779

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY S. SMITH,
*Appellant*,

v.

JOE NORWOOD, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Labette District Court; JEFFRY L. JACK, judge. Opinion filed August 31, 2018.
Affirmed.

*Lucas J. Nodine*, of Nodine Legal, LLC, of Parsons, for appellant.

*Joni Cole*, legal counsel, El Dorado Correctional Facility, for appellees.

Before MALONE, P.J., MCANANY and POWELL, JJ.

PER CURIAM: Former inmate Anthony S. Smith appeals the district court's summary dismissal of his K.S.A. 2017 Supp. 60-1501 petition for writ of habeas corpus, in which he alleged that his conditional release date was incorrect. After a thorough review of the record, we conclude summary dismissal was proper because Smith failed to exhaust his administrative remedies. But even if Smith had properly exhausted his administrative remedies and stated a valid claim for relief, the issue raised is moot as Smith is no longer in the custody of the Secretary of Corrections. Accordingly, we affirm the district court.

1

The underlying facts surrounding Smith's 60-1501 petition were previously discussed by another panel of this court in *Smith v. Roberts*, No. 115,336, 2017 WL 1367053, at *1-2 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. 1320 (2017).

"Anthony Smith entered prison in the early 1980s and was granted parole in 1991. While on parole, he absconded and a warrant was issued for his arrest in February 1993. He was apprehended on an absconder warrant and arrested for new crimes in May 1993. Smith was sentenced in August 1993 on his new crimes to a pre-guidelines sentence of 3 to 10 years, a term which was added to his sentences on several prior convictions, for an aggregate indeterminate sentence of 10 to 40 years. Due to 'delinquent time' (time between the date his absconder warrant issued and the date he was arrested on the warrant), he was given a conditional release date of November 19, 2009.

"In January 1995, Smith was again granted parole and again absconded. An absconder warrant was issued in August 1995. Smith was rearrested in February 1996 and booked into federal custody as he was also under a federal indictment. He remained in federal custody through the resolution of those charges in November 1996, when he was returned to the custody of the Kansas Secretary of Corrections. Due to delinquent time while in absconder status, Smith's conditional release date was adjusted to June 2, 2010.

"Smith was again paroled in November 2006. While on parole, he committed a new crime (Aggravated Battery—Reckless, Bodily Harm) based on an offense on September 30, 2010. For this conviction, he was sentenced to an 18-month determinate sentence, to be served consecutive to his aggregated indeterminate sentence. While Smith was on parole prior to his arrest for the September 30, 2010, offense, his conditional release date of June 2, 2010, passed.

"From June 11, 2013, through October 20, 2014, Smith engaged in a series of grievances and other correspondence alleging that the Kansas Department of Corrections (KDOC) was using an incorrect 'sentence begins date' for his aggregated indeterminate

2

sentence of 10 to 40 years, which affected his conditional release date. He argued that his 'delinquent time' had not been calculated properly into his sentence. Smith received no relief. Among the responses Smith received were two letters from the warden. The first, dated July 15, 2013, stated Smith's conditional release date on his indeterminate sentences had passed on June 2, 2010, when he was out on parole, and he would not be given a new conditional release date. The warden's later response, dated June 11, 2014, informed Smith that his sentence computation is part of the classification decision making process. The warden also acknowledged to Smith that a similar May 2014 inquiry had informed Smith that his sentence computation had been reviewed in October 1993 and Smith was ineligible for conversion. Finally, the warden informed Smith that use of the grievance procedure for classifications is prohibited and that no further action could be taken.

"On November 4, 2014, Smith filed a petition for a writ of habeas corpus in district court. Smith alleged that the KDOC incorrectly calculated his conditional release date and his maximum release date and is unlawfully depriving him of his liberties. The district court issued a writ of habeas corpus on November 18, 2014, ordering Smith to be brought to court for an evidentiary hearing to consider the issue of the lawfulness of his custody. The State moved to dismiss because Smith had not shown that he had exhausted administrative remedies.

"At the hearing, the State acknowledged that Smith had sent correspondence to the Secretary of Corrections, but it argued that the correspondence was not an appeal of a grievance. The State argued that the 2013 and 2014 grievance issues both involved Smith's desire to change his conditional release date so that he could be released. Smith argued that his 2013 grievance was about his inaccurate conditional release date based on an inaccurate sentence begins date relative to his aggregated sentence, but his 2014 grievance was about how his delinquent time during his periods in which he absconded was miscalculated, causing the KDOC to hold him past his correct conditional release date. The district court took the matters under advisement.

"In its memorandum decision filed on June 1, 2015, the district court granted the State's motion to dismiss and denied Smith's request for a writ of habeas corpus. The court attached two documents to its decision: Smith's 2013 grievance form; and the

3

warden's July 15, 2013, response to that grievance. The decision found as follows: The grievance filed in 2014 involved the same issue as that filed in 2013, since both involved recalculating Smith's conditional release date on his indeterminate aggregated sentence; the 2014 grievance was a 'rehash' of the 2013 grievance, which was not appealed to the Secretary; Smith did not exhaust administrative remedies regarding the 2014 grievance; Smith did not timely file his petition after a final decision regarding the 2013 grievance; and even if Smith exhausted administrative remedies and filed a timely petition, his argument regarding the necessity to recalculate his conditional release date was not meritorious."

That panel ultimately held:

"[A]lthough Smith followed procedure in 2013, he did not appeal. When he appealed in 2014, he did not follow procedure. We find the district court's factual findings are supported by substantial, competent evidence supporting the conclusion that Smith failed to exhaust his administrative remedies before filing his petition for a writ of habeas corpus in November 2014. Accordingly, we affirm the district court's grant of the State's motion to dismiss and its denial of Smith's petition." 2017 WL 1367053, at *4.

On March 16, 2017, Smith filed a third habeas petition under K.S.A. 60-1501 and again argued the same issue he raised in his prior two petitions: his release date was incorrect. However, because the warden failed to timely respond to Smith's third petition, the district court issued writs of habeas corpus to the warden and Secretary of Corrections; they responded by filing a motion for summary dismissal. Ultimately, the district court granted the motion for summary dismissal, holding that Smith's petition was barred by res judicata.

Smith timely appeals.

4

DID THE DISTRICT COURT ERR IN DISMISSING SMITH'S 60-1501 PETITION?

We exercise unlimited review of a summary dismissal. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009). Additionally, whether the doctrines of res judicata and mootness are applicable are questions of law over which this court exercises unlimited review. See *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015); *State v. Montgomery*, 295 Kan. 837, 841, 286 P.3d 866 (2012).

The district court dismissed Smith's third 60-1501 petition through the application of the doctrine of res judicata, holding that the issue had already been litigated. "Before the doctrine of res judicata will bar a successive suit, the following four elements must be met: (a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits." *Cain*, 302 Kan. 431, Syl. ¶ 2. Here, the first three elements were met, but it does not appear a final judgment was issued on the merits. Our court affirmed the dismissal of Smith's previous petition because he failed to exhaust his administrative remedies, which is not a decision on the merits of the petition. "A 'final decision' generally disposes of the entire merits of a case and leaves no further questions or possibilities for future directions or actions by the lower court." *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015). Therefore, the doctrine of res judicata is not applicable here. However, if a district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015). Thus, we will examine whether summary dismissal was appropriate on another ground.

To state a claim for relief under K.S.A. 2017 Supp. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648. In addition, an inmate must file "proof that the administrative remedies have been exhausted" with his or her petition. K.S.A. 75-52,138. "[S]trict

compliance with these exhaustive requirements" is required. *Corter v. Cline*, 42 Kan. App. 2d 721, 723, 217 P.3d 991 (2009).

"The administrative steps for filing a grievance and appealing it up the chain within the KDOC is detailed in K.A.R. 44-15-102. Essentially, an inmate begins the process by filing a grievance at the Unit Team level. The Unit Team then has 10 calendar days to reply. If the Unit Team does not reply within that timeframe, the inmate's grievance may be sent to the warden without the Unit Team's signature. K.A.R. 44-15-102(a). If the inmate is not satisfied with the Unit Team's response, within 3 days of the response, the [inmate] may request that the grievance be transferred to the warden, attaching any and all documents used to attempt to solve the problem. K.A.R. 44-15-102(b).

"Upon receipt of the grievance by the warden, a serial number is assigned, as well as an acknowledgement of the date of receipt; the warden has 10 working days to answer the inmate's grievance. K.A.R. 44-15-102(b)(3)(A). Any grievance may be rejected by the warden if it does not comport with the regulations. If rejected, the grievance shall be sent back to the Unit Team for an immediate answer to the inmate. K.A.R. 44-15-102(b)(3)(F).

"If no response from the warden is received by the inmate within the time allowed, any grievance may be sent to the Secretary of Corrections with an explanation of the reason for the delay. K.A.R. 44-15-102(b)(3)(G). Grievances can be appealed to the Secretary within 3 [calendar] days if the warden's answer is not satisfactory, and the Secretary then has 20 working days to respond. If, however, a grievance is submitted to the Secretary without prior action by the warden, the Secretary may return the grievance to the warden. If the warden does not respond in a timely manner, the Secretary shall accept the grievance. K.A.R. 44-15-102(c)." *Smith*, 2017 WL 1367053, at *3.

Here, Smith has yet again failed to properly exhaust his administrative remedies before filing his petition. On February 20, 2017, Smith filed his grievance at the Unit Team level, and the Unit Team timely responded to Smith's grievance on February 28, 2017. Smith then sent his grievance to the warden on March 6, 2017, who timely

responded on March 9, 2017. However, Smith failed to timely appeal from the warden's response to the Secretary of Corrections as required by K.A.R. 44-15-102(c)(1). Thus, based on the attachments to the petition before the district court, Smith failed to exhaust his administrative remedies.

Although a copy of the form Smith sent to the Secretary pertaining to this grievance does appear in the record on appeal, there are three defects which mandate summary dismissal of Smith's petition. First, proof that Smith exhausted his administrative remedies must be supplied with his petition, and he failed to attach any such proof. See K.S.A. 75-52,138. Second, Smith sent his grievance appeal to the Secretary on March 13, 2017—four calendar days after the warden's answer—rather than the required three calendar days. K.A.R. 44-15-102(c)(1). Third, three days after Smith sent his grievance appeal to the Secretary, he filed his present 60-1501 petition in the district court, depriving the Secretary the permitted 20 working days to respond to Smith's grievance. See K.A.R. 44-15-102(c)(3). Thus, the district court was correct, albeit for the incorrect reasons, in granting the motion for summary dismissal because Smith failed to properly exhaust his administrative remedies.

Finally, even if we assume that Smith had properly exhausted his administrative remedies and that his grievance has merit, this issue is now moot. An issue is moot when "it clearly and convincingly appears that the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose." *Montgomery*, 295 Kan. 837, Syl. ¶ 3.

Here, Smith's counsel states in his brief that Smith was paroled to a federal detainer on January 11, 2018; counsel also states that this information is reflected on the Kansas Department of Corrections website. Because Smith admits he is no longer in the custody of the Secretary of Corrections, any judgment that could be entered would be

ineffectual and would not impact Smith's rights. As we lack the power to effectuate any possible remedy in the federal system, the issue raised in Smith's petition is moot.

Affirmed.