NOT DESIGNATED FOR PUBLICATION

No. 118,667

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENDRALL D. RANSOM,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed December 7, 2018. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: Kendrall Davon Ransom appeals the district court's summary dismissal of his second K.S.A. 60-1507 motion. Upon our review, we hold that the motion was untimely and Ransom has failed to establish that manifest injustice will result if he is not allowed to proceed. Accordingly, we affirm the district court's denial of Ransom's motion.

1

In 2007, a jury found Ransom guilty of two counts of first-degree felony murder and two counts of attempted aggravated robbery. Roger L. Falk represented Ransom at the jury trial. During the trial, the State presented evidence of Ransom's confession, in which he admitted his involvement in the charged crimes. The State also presented evidence of firearms recovered from the house of Sharondi Washington, a State's witness. Following the guilty verdicts, Ransom was sentenced to two consecutive hard-20 life sentences and an additional consecutive 68 month term of imprisonment.

Ransom filed a direct appeal to the Kansas Supreme Court. In the appeal Ransom contended:

"(1) The district judge erred by denying his motion to suppress his confession; (2) certain testimony violated his confrontation rights under the Sixth Amendment to the United States Constitution and was inadmissible hearsay; (3) he should have received a proximate cause felony-murder jury instruction; (4) he was entitled to a mistrial after a State witness violated a limine order; (5) the State should not have been permitted to amend its information; and (6) the evidence of the felony murder of Christopher Spain Bey was insufficient." *State v. Ransom*, 288 Kan. 697, 700, 207 P.3d 208 (2009).

Our Supreme Court rejected each of Ransom's arguments and affirmed his convictions. 288 Kan. at 717. The opinion was filed on May 15, 2009, and the mandate was issued 24 days later.

Nine months later, in February 2010, Ransom filed his first K.S.A. 60-1507 motion. In that motion, Ransom argued: (1) the district court violated his rights by allowing Washington to testify; (2) the district court erred by not suppressing his confession; and (3) his criminal trial attorney, Falk, failed to provide effective assistance.

2

The district court appointed Stephen J. Ternes to represent Ransom in the K.S.A. 60-1507 proceeding.

The district court held a preliminary hearing, but determined that an evidentiary hearing was unnecessary and denied the K.S.A. 60-1507 motion. Our court affirmed this ruling in *Ransom v. State*, No. 105,042, 2011 WL 6382886 (Kan. App. 2011) (unpublished opinion), *rev. denied* 296 Kan. 1131 (2013). The Kansas Supreme Court denied review on February 19, 2013, and the mandate was issued one day later.

Seven months later, on September 19, 2013, Ransom filed his second K.S.A. 60-1507 motion, which is the subject of this appeal. In this motion, Ransom alleged:

(1) The district court should have suppressed his confession because he was seized in violation of the Fourth Amendment;

(2) He had standing to object to the search of Washington's house and the evidence seized from the house should have been suppressed;

(3) Washington's trial testimony should have been suppressed because the district court failed to appoint counsel to represent her even though she was arrested as a material witness;

(4) The district court erred by not excluding a detective from the courtroom until after her testimony;

(5) The district court erred by not accepting defense counsel's stipulation to the victims' cause of death and request to exclude gruesome autopsy photographs;

(6) There was insufficient evidence to support the convictions; and

(7) He received ineffective assistance from his trial counsel, his direct appeal counsel, and his first K.S.A. 60-1507 counsel.

In this second K.S.A. 60-1507 motion, Ransom acknowledged that it was untimely filed and successive. He claimed, however, that exceptional circumstances excused his

3

failure to argue the new issues in the first K.S.A. 60-1507 motion. In particular, Ransom claimed that Ternes was ineffective for not amending the first K.S.A. 60-1507 motion to include the issues presented in the second motion. Ransom also asserted that the one-year time limitation to file a K.S.A. 60-1507 motion should be extended to prevent manifest injustice.

The district court denied Ransom's second K.S.A. 60-1507 motion, ruling that Ransom "failed to corroborate allegations of insufficiency on the part of counsel with specific statements of fact." Ransom filed a motion to alter or amend judgment, which the district court also denied. He appeals.

## ANALYSIS

When considering a K.S.A. 60-1507 motion, a district court has three options:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Our standard of review depends on which of these options was employed by the district court. When, as here, the district court summarily denies a K.S.A. 60-1507 motion, the standard of review is de novo. As a result, we must determine whether the motion, files, and records of the case conclusively show that Ransom is entitled to no relief. See *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

4

On appeal, Ransom contends the district court erred by dismissing his second K.S.A. 60-1507 motion because the allegations justified an evidentiary hearing. The State responds that Ransom failed to prove either manifest injustice or exceptional circumstances to justify the late and successive filing of the motion. The State also contends that Ransom's claims are largely barred by res judicata.

Generally, a person subject to a criminal sentence may challenge the legal sufficiency of that punishment by filing a K.S.A. 60-1507 motion after exhausting appeals in the direct criminal case. K.S.A. 2017 Supp. 60-1507(a). To avoid the summary denial of a K.S.A. 60-1507 motion, however, the movant bears the burden of establishing entitlement to an evidentiary hearing. *Sola-Morales*, 300 Kan. at 881. Several procedural limitations apply to the relief available under K.S.A. 60-1507.

One procedural limitation is that a defendant has one year from when a conviction becomes final to file a K.S.A. 60-1507 motion. K.S.A. 2017 Supp. 60-1507(f)(1). The district court may extend this one-year time limitation only to prevent a manifest injustice. K.S.A. 2017 Supp. 60-1507(f)(2). As discussed below, we find that Ransom's second K.S.A. 60-1507 motion is untimely, and he fails to show that manifest injustice will result if he is not allowed to proceed with the motion.

*Ransom's Motion is Untimely*

Ransom contends that his second K.S.A. 60-1507 motion was timely because it was brought within one year of when our court affirmed the denial of his first K.S.A. 60-1507 motion. Ransom's argument requires interpretation of K.S.A. 2017 Supp. 60-1507. Interpretation of a statute is a question of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015).

The time limitation in K.S.A. 2017 Supp. 60-1507 provides:

"(1) Any action under this section must be brought within one year of:

(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or

(B) the denial of a petition for writ of certiorari to the United States supreme court or issuance of such court's final order following granting such petition." K.S.A. 2017 Supp. 60-1507(f)(1).

Ransom's argument that his second motion is timely because he filed it within one year of the denial of his first K.S.A. 60-1507 motion is not meritorious. See *Hutton v. State*, No. 112,862, 2016 WL 368066, at *2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 305 Kan. 1251 (2017). Under the plain language of K.S.A. 2017 Supp. 60-1507(f)(1), Ransom was required to file the second motion within one year of the final order or termination of his direct appeal. "[T]he term 'direct appeal' used in K.S.A. 60-1507(f) refers to the underlying criminal case and not a collateral habeas corpus action." *Overton v. State*, No. 111,181, 2015 WL 1636732, *2 (Kan. App. 2015) (unpublished opinion).

Our Supreme Court affirmed Ransom's convictions on direct appeal in 2009. Ransom filed this second K.S.A. 60-1507 motion in 2013, more than four years after the mandate was issued in the underlying criminal case. As a result, Ransom's motion is untimely and he must establish that manifest injustice would occur if it were dismissed.

*Ransom Fails to Show Manifest Injustice*

In his second K.S.A. 60-1507 motion, Ransom asserted that he satisfied the manifest injustice standard because "[e]ach issue raised in this second 1507 motion presents an easily understood and recognized violation of movant's constitutional rights."

6

In *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), our Supreme Court held that manifest injustice should be determined from the totality of the circumstances. To determine whether manifest injustice exists, courts were to consider the following nonexhaustive list of factors: (1) whether the movant provides persuasive reasons or circumstances that prevented the movant from filing the K.S.A. 60-1507 motion within the time limitation; (2) whether the merits of the movant's claims raise substantial issues of law or fact deserving of the district court's consideration; and (3) whether the movant sets forth a colorable claim of actual innocence, i.e., factual, not legal, innocence. 299 Kan. 607, Syl. ¶ 8.

After *Vontress* was filed, the Legislature amended K.S.A. 60-1507(f) to limit a court's consideration of what constitutes manifest injustice. L. 2016, ch. 58, § 2. The amendment allows a court to consider only: (1) "why the prisoner failed to file the motion within the one-year time limitation or [2] whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2017 Supp. 60-1507(f)(2)(A). That said, our Supreme Court recently held that movants who filed their K.S.A. 60-1507 motions before July 1, 2016—the date that the amended version of K.S.A. 60-1507(f) was enacted—have a vested right to argue under the *Vontress* test, including the second factor or any other factor that could establish manifest injustice. *White v. State*, 308 Kan. 491, 502, 421 P.3d 718 (2018).

Because Ransom filed his motion before July 1, 2016, we will apply the *Vontress* factors to determine whether he established manifest injustice to justify review of his untimely second motion. Under *Vontress*, no single factor is dispositive, and courts need not weigh the factors equally. 299 Kan. at 616-17. As explained by our Supreme Court:

"This means that courts should not simply tally the factors and determine, for example, that a movant had established manifest injustice simply because two out of three factors favored that outcome. Instead, a court applying the *Vontress* factors must consider all the

7

circumstances and determine if, in total, those circumstances create a situation in which it would be obviously unfair or shocking to the conscience to not allow a movant to pursue relief under 60-1507." *White*, 308 Kan. at 501.

In applying the three *Vontress* factors to this case, we are convinced that Ransom has failed to establish manifest injustice. The first *Vontress* factor does not support a finding of manifest injustice. Other than the claimed ineffective assistance of Ternes—his first K.S.A. 60-1507 counsel—Ransom fails to assert any persuasive reason or circumstance that prevented him from filing the motion within the one-year time limitation. Moreover, most if not all of Ransom's claims derived from the jury trial. As a result, they were apparent or should have been apparent to Ransom from the outset. And, as explained in our analysis of the second *Vontress* factor, Ransom's assertion of the purported ineffectiveness of Ternes is not persuasive.

Considering the second *Vontress* factor, we find the merits of Ransom's claims do not raise substantial issues of law or fact deserving of the district court's consideration. Most of Ransom's claims in the second K.S.A. 60-1507 motion were addressed or could have been addressed either in his direct appeal or in his first K.S.A. 60-1507 motion.

In a K.S.A. 60-1507 proceeding, the sentencing court need not entertain a second or successive motion for similar relief on behalf of the same prisoner. *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013) (citing K.S.A. 60-1507[c]). "A movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." 296 Kan. 898, Syl. ¶ 2. Additionally, a K.S.A. 60-1507 motion may not typically be used as a substitute for a direct appeal or for a second appeal. See *State v. Kelly*, 291 Kan. 868, 872, 248 P.3d 1282 (2011).

The only claim in Ransom's second K.S.A. 60-1507 motion that is not successive is his claim that he received ineffective assistance of counsel in his first K.S.A. 60-1507 motion. See *Hutton*, 2016 WL 368066, at *3. Ransom relies on this claim also to establish exceptional circumstances justifying consideration of his successive claims.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish: (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales*, 300 Kan. at 882.

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Ransom argues that Ternes was ineffective because he did not amend the first K.S.A. 60-1507 motion to include the issues now presented in his second K.S.A. 60-1507 motion. However, as discussed below, the claims Ransom raises in his second motion do not warrant relief. As a result, Ternes was not ineffective for failing to amend the first motion to include them.

First, Ransom's claim that his confession should have been suppressed is barred by the doctrine of res judicata. This doctrine prevents an individual from splitting a single

9

issue into multiple lawsuits. See *Shelton v. DeWitte*, 271 Kan. 831, 836-37, 26 P.3d 650 (2001). The res judicata doctrine applies to a K.S.A. 60-1507 movant who tries to raise issues "which have previously been resolved by a final appellate court order in his or her criminal proceeding." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 14, 136 P.3d 390 (2006). Our Supreme Court in Ransom's direct appeal rejected his challenge to the admission of his confession. Accordingly, this claim is barred by res judicata. Moreover, the claim was also included in Ransom's first K.S.A. 60-1507 motion.

Second, Ransom lacks standing to challenge the search of Washington's home that revealed the firearms used in Ransom's crimes. Ransom claims that he had standing to challenge the search because he was an occasional social guest and stored property in Washington's home. However, Ransom was not a social guest or present when Washington's home was searched. As a result, he had no reasonable expectation of privacy or meaningful connection to Washington's home in order to qualify for protection under the Fourth Amendment. See *State v. Talkington*, 301 Kan. 453, 479, 345 P.3d 258 (2015). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

Third, Ransom argues Washington's testimony should have been suppressed because she was arrested on a material witness warrant but was not appointed counsel as required by K.S.A. 22-2805. The record, however, fails to show that Washington was ever arrested as a material witness under K.S.A. 22-2805. Assuming Ransom's factual assertions are true, however, this claim fails because Ransom does not explain how he may assert Washington's statutory rights on her behalf to exclude her testimony. See *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (Parties "generally must assert [their] own legal rights and interests, and cannot rest [a] claim to relief on the legal rights or interests of third parties.").

10

Fourth, Ransom claims the district court erred and his trial counsel was ineffective by allowing a detective to sit at the prosecution table before she testified. In *State v. Sampson*, 297 Kan. 288, 297, 301 P.3d 276 (2013), our Supreme Court first held that district courts may not allow a testifying law enforcement officer to sit at the prosecution table during a jury trial. Our court has previously determined that trial attorneys representing defendants before *Sampson* could not have anticipated the court's ruling given the legal landscape at the time. See *Walker v. State*, No. 109,585, 2014 WL 3843084, at *6 (Kan. App. 2014) (unpublished opinion). We find the reasoning in *Walker* persuasive and join in its result. Ransom's criminal trial and first K.S.A. 60-1507 action ended before *Sampson* was filed. None of Ransom's prior counsel may be considered ineffective for not objecting to the detective sitting with the prosecutor during trial.

Fifth, Ransom argues that the district court violated his due process rights by admitting photographs of the victims' bodies. He asserts that the district court should have accepted defense counsel's offer to stipulate to the victims' cause of death and excluded the gruesome photographs.

Contrary to Ransom's claims, our review of the record reveals that defense counsel did not request a stipulation to the victims' cause of death. Instead, Ransom's counsel objected to the photographs and argued that their prejudicial value outweighed their probative value because "the cause of death is not really an issue." The district court overruled Ransom's objection, finding that the photographs of the victims' bodies were "not gruesome, much less unusually gruesome." The district court also noted that "we don't know for certain what the defense is going to be."

Kansas law provides:

"'The admission of photographs in a homicide case is a matter within the trial court's discretion, and the trial court's ruling will not be disturbed on appeal absent the

11

showing of an abuse of that discretion. An abuse of discretion has occurred when the admitted photographs were unduly repetitious and cumulative or their introduction was solely for the purpose of prejudice. The admission of photographs in a murder case has rarely been held to be an abuse of discretion.

"Photographs depicting the extent, nature, and number of wounds inflicted are generally relevant in a murder case. Photographs which are relevant and material in assisting the jury's understanding of medical testimony are admissible. Specifically, photographs which aid a pathologist in explaining the cause of death are admissible. Photographs used to prove the manner of death and the violent nature of the crime are relevant and admissible.' [Citations omitted.]." *State v. Green*, 274 Kan. 145, 147, 48 P.3d 1276 (2002).

In this case, the district court admitted seven photographs showing the victims' bodies at the time of their autopsies. The record shows that the seven admitted photographs were selected instead of more gruesome photographs, which the State did not seek to introduce into evidence. During trial, the coroner testified that the photographs would help her explain her findings about the victims' cause of death. The coroner then testified using the photographs to explain her testimony and conclusions.

Ransom fails to establish that the admission of the photographs was an abuse of discretion or violated his right to due process. The district court reviewed the proposed photographic exhibits, heard the coroner testify that the photographs would assist her in her testimony, and admitted seven of them. We are unable to conclude that the district court erred by admitting the photographs.

Sixth, there was sufficient evidence to support all of Ransom's convictions. A jury convicted Ransom of two counts of attempted aggravated robbery, first-degree felony murder of Christopher Spain Bey, and first-degree felony murder of Donta McDonald. In his direct appeal, Ransom argued that the evidence was insufficient to support his

12

conviction of felony murder of Spain Bey. Our Supreme Court rejected this claim in *Ransom* and, thus, it is barred by res judicata. See *Drach*, 281 Kan. 1058, Syl. ¶ 14.

With regard to the remaining convictions of attempted aggravated robbery and first-degree felony murder of McDonald, an appellate court's standard of review is well known:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

To support a felony murder conviction, there must be evidence that a defendant committed a felony inherently dangerous to human life that directly resulted in a homicide. *Ransom*, 288 Kan. at 716. "A defendant may be convicted of felony murder even if the victim was not killed by the defendant or an agent of the defendant, as long as the homicide occurred as a direct result of an inherently dangerous felony." 288 Kan. at 716-17.

In this case, the State presented evidence of Ransom's confession to Detective Rick Craig. Ransom said that he and three others planned to rob a drug house on March 20, 2006. Armed with guns, the group drove to a drug house. But the group's plans changed when McDonald walked out of the house and headed towards a truck. The group decided to rob McDonald. Ransom ran and confronted McDonald with a shotgun, demanding money. Ransom then shot McDonald, who later died.

After shooting McDonald, Ransom and the group went to Washington's house. Ransom and two of the other men got into a different vehicle and drove to another drug

house. Ransom explained the group's plan was to kick in the door, make everybody inside lay down, and then steal their money and drugs. The men approached the second drug house, stating they were there to buy drugs. An individual opened the door but closed it after he saw Ransom holding a shotgun. After gunshots were fired, Ransom fled from the residence. Officers found Spain Bey dead after the second attempted robbery.

Ransom's confession, corroborated by other direct and circumstantial trial evidence, provided sufficient evidence to support the two counts of attempted aggravated robbery and the first-degree felony murder of McDonald. As a result, Ransom's claim that there was insufficient evidence to support his conviction fails.

Finally, Ransom makes several claims about the representation of his trial counsel, Falk, which he asserts constitutes ineffective assistance. Specifically, Ransom argues that Falk: (1) did not interview any witnesses before trial; (2) did not fully advise Ransom of the desirability of accepting a plea agreement; (3) had no defense strategy; (4) failed to make a proper motion for judgment of acquittal; and (5) conceded Ransom's guilt on three counts in closing argument. In these claims, Ransom offers only conclusory statements, presents no evidentiary basis, and no such basis appears in the record. Even liberally construed, these claims did not entitle Ransom to an evidentiary hearing. See *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018).

Additionally, the record does not support Ransom's complaints about Falk. Inconsistent with Ransom's claim that his trial counsel failed to interview any witnesses before trial, Falk thoroughly cross-examined many of the State's witnesses. This was in accordance with Falk's trial strategy of challenging the State's evidence and arguing that the State failed to prove Ransom's guilt beyond a reasonable doubt. And contrary to Ransom's assertions, Falk made a proper motion for judgment of acquittal and did not concede Ransom's guilt in closing arguments.

Since Ransom's claims in his second K.S.A. 60-1507 motion do not warrant relief, his first K.S.A. 60-1507 counsel was not ineffective for failing to amend the first motion to include them. As a consequence, Ransom's second K.S.A. 60-1507 motion raises no substantial issues of law or fact. We are persuaded that the second *Vontress* factor weighs against a finding of manifest injustice.

Lastly, considering the third *Vontress* factor, Ransom makes no colorable claim of actual innocence. Moreover, Ransom does not argue that his confession was false or that he otherwise did not commit the crimes.

In applying the *Vontress* factors and considering the totality of the circumstances, we find that it is not obviously unfair or shocking to the conscience to preclude Ransom from pursuing relief under his second K.S.A. 60-1507 motion. Accordingly, Ransom has failed to establish manifest injustice. Because Ransom fails to show manifest injustice for the court to consider his untimely second K.S.A. 60-1507 motion, his claims are barred. We, therefore, affirm the district court on this basis. See *Rivera v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 949, 956, 206 P.3d 891 (2009) ("On appeal, the district court's decision will be upheld if it is correct for any reason.").

The district court did not err by summarily dismissing Ransom's second K.S.A. 60-1507 motion.

Affirmed.