NOT DESIGNATED FOR PUBLICATION

No. 127,104

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of JAMES B. LYONS.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Submitted without oral argument. Opinion filed January 17, 2025. Affirmed.


*Russell L. Mills*, of Derby, for appellants.


*Ted E. Knopp*, of Knopp Law Group P.A., of Wichita, for appellee.


Before ATCHESON, P.J., CLINE and PICKERING, JJ.


PER CURIAM: This case involves a dispute over the disposition of surplus proceeds after a mortgage foreclosure. Parallel proceedings in civil court involving the foreclosure and in probate court involving the administration of the estate of the deceased homeowner, combined with various delays by the parties' attorneys, caused much confusion. Russell and Joni Mills, who purchased the foreclosed home at a sheriff's sale before an estate was opened, claim they are entitled to the surplus proceeds. They appeal the decision of the probate court finding those funds are property of the estate.


After a careful review of the record—which, admittedly, contains several significant deficiencies—and the parties' arguments in their briefs, we see no error in the probate court's decision. We therefore affirm its order awarding the surplus proceeds to the deceased homeowner's estate.


1

FACTUAL AND PROCEDURAL BACKGROUND

After the passing of James B. Lyons on October 6, 2020, payments towards his home's mortgage ceased. No probate proceeding was filed within six months of Lyons' death, so eventually the mortgage company petitioned to foreclose the outstanding mortgage on Lyons' home. Lyons' unknown heirs were served by publication, with proof of publication filed on May 20, 2021.

The district court granted judgment to the mortgage company on June 16, 2021, and ordered Lyons' home to be sold at a sheriff's sale. The journal entry of judgment terminated the rights of redemption under K.S.A. 2020 Supp. 60-2414(a) because it found the property had been abandoned.

Approximately a month later, a third party, Desiree Danler, tried to intervene in the foreclosure action using the services of attorney Ted Knopp. Danler sought to cancel the foreclosure sale and claimed to have purchased the redemption rights on Lyons' home from Lyons' purported heirs. The district court judge in the foreclosure action, Stephen Ternes, denied Danler's motion. He noted that Danler had not established she had purchased the redemption rights from an heir of Lyons and, in any event, the redemption rights were terminated a month before she sought to intervene.

The Mills purchased Lyons' home at a sheriff's sale on July 28, 2021. After the proceeds were used to pay off the mortgage and costs of the foreclosure, approximately $22,000 remained. Judge Ternes ordered these surplus proceeds to be held by the Clerk of the District Court until further notice. On August 12, 2021, Judge Ternes granted the mortgage company's motion for confirmation of the sheriff's sale.

On August 13, 2021, Vail Fruechting, also through Ted Knopp, petitioned in probate court to open the administration of the Lyons estate (the Estate) and was

2

appointed as special administrator. The petition claimed Lyons' home as an asset of his estate. On August 19, 2021, Knopp filed several motions in the foreclosure action on behalf of Fruechting, seeking to set aside the foreclosure and challenging the sale of Lyons' home. Judge Ternes denied these motions and noted: "The current Movant, Vail Fruechting, is not a party in this matter, does not have standing in this matter, and has not been granted intervener status by the Court."

On August 26, 2021, and September 3, 2021, Knopp (on behalf of Danler) filed motions to consolidate the foreclosure action and the probate action and to set aside the order confirming sale of the home. Knopp filed both motions in the foreclosure action. After a hearing on September 22, 2021, Judge Ternes denied the motions. Around that time, Knopp (on behalf of Fruechting) also filed a motion to consolidate in the probate action, which was denied.

Meanwhile, the Mills moved to intervene in both the probate action and the foreclosure action. Judge Ternes denied their motion to intervene in the foreclosure action as moot, since the home had already been sold. The district court judge in the probate action, Robb Rumsey, granted the Mills' petition to intervene in the probate action.

On August 18, 2021, the Mills petitioned to set aside the Letters of Special Administration in the probate action, claiming the portion which empowered Fruechting to take possession of Lyons' home was improper as the Mills had purchased the home and that sale was confirmed before the Letters were issued. Their petition was heard by Judge Rumsey on September 13, 2021, who ruled Lyons' home was not part of the Estate. He also ordered that the Estate should be administered.

Knopp filed a renewed motion to alter or amend the foreclosure judgment (on behalf of both Danler and Fruechting) on March 10, 2022. Judge Ternes denied this

motion and granted the Mills' motion for sanctions against Knopp for his "repeated litigation of the same issues" which "were presented to cause unnecessary delay as set out in K.S.A. 60-211(b)(1) and were not supported by the law or the facts as set out in K.S.A. 60-211(b)(2) and (3)."

On May 26, 2022, Knopp (on behalf of Danler) filed a Motion to Payout Funds, and on June 3, 2022, he filed an Amended Motion to Payout Funds, both in the foreclosure action. Knopp sought return of the funds Danler paid into the Clerk of the District Court in her unsuccessful attempt to redeem Lyons' home from foreclosure and payment of the surplus proceeds to Fruechting, which were still being held by the clerk. The Mills opposed Danler's request, arguing she had no legal claim to the funds. But the Mills admitted the surplus proceeds "should be provided to the heirs of . . . Lyons if they continue to have a legal claim to the funds." They also noted the special administrator of the Estate was not a party in the foreclosure action and contended the surplus proceeds should not be paid out until it could be determined whether Danler had perpetrated a fraud against Lyons' heirs. And the Mills stated: "It simply makes no common sense that the estate of James B. Lyons would not want to receive the $22,000 overage payment if it is still entitled to it." That said, the Mills also argued the Estate had no claim to the surplus fund since Lyons' redemption rights were extinguished.

The Motions to Payout Funds were heard by Judge Ternes on June 13, 2022. His minute order from that hearing notes the only person to appear was the attorney for the mortgage company—Knopp, his clients, and the Mills were apparently not present. Judge Ternes ordered the funds Danler paid to the clerk should be refunded to her but denied the portion of her motion seeking payment of the surplus proceeds. Judge Ternes ordered the surplus proceeds should be paid to the Mills "on or after September 15, 2022, unless the Probate Court . . . orders otherwise before that date."

4

On August 17, 2022, Knopp petitioned to pay out the surplus proceeds to Fruechting in the probate action. Knopp apparently set the matter for hearing on August 30, 2022, but Mr. Mills (who is also an attorney) was not available on that date. Mr. Mills obtained new dates from Judge Rumsey's office and coordinated rescheduling the hearing with Knopp.

The hearing on the petition to pay out the surplus proceeds was held on September 15, 2022. Judge Rumsey determined the surplus proceeds were property of the Estate. He noted the Mills told the court they were holding the surplus proceeds pending the court's decision and found the Estate, as prior owner of the foreclosed home, was entitled to any surplus proceeds over the amount of the liens. He also found the foreclosure of Lyons' interest in the property did not foreclose the owner's (Lyons) right to the surplus proceeds remaining after the sheriff's sale. He held the surplus proceeds were property of the Estate whether they were held by the Clerk or paid to the Mills. Knopp was directed to prepare a journal entry of Judge Rumsey's decision. On September 22, 2022, Mills filed a "Petition to Dismiss, Motion for Relief from Judgment and Enforcement of the Doctrine of Election of Remedies" in the probate action, asking Judge Rumsey to reconsider his ruling. Judge Rumsey denied this petition on October 17, 2022, and directed Knopp to prepare a proposed journal entry for this decision as well.

Meanwhile, Knopp obtained an Order Appointing an Administrator for the Estate in the probate action on September 15, 2022. In this order, Knopp recited that the home was an asset of the Estate, along with the surplus proceeds. The Mills understandably filed an objection to this order, asking for the portions of the order that listed Lyons' home as an asset of the Estate to be stricken. The record contains no ruling on this objection.

On March 13, 2023, Fruechting (through Knopp) filed an Inventory of the Estate in which he listed the surplus proceeds as the only asset of the Estate. The Mills objected

to the Inventory, claiming that since Knopp had not yet journalized Judge Rumsey's September 15, 2022 ruling, Judge Ternes' deadline of September 15, 2022, for the probate court to determine ownership of the surplus proceeds had not been met. The Mills thus claimed they were entitled to the surplus proceeds. Judge Rumsey overruled the Mills' objection to the Inventory on May 10, 2023.

Knopp apparently delayed in preparing the journal entries for Judge Rumsey's decisions at the September 15, 2022 and October 17, 2022 hearings, and then the parties had difficulty agreeing on the language for these journal entries. The journal entries were eventually filed on December 4, 2023. This appeal followed.

REVIEW OF THE MILLS' APPELLATE CHALLENGES

The Mills appeal Judge Rumsey's decision awarding the surplus proceeds to the Estate, claiming he had no jurisdiction over Judge Ternes' decision in the foreclosure action and that Judge Ternes' decision should control. They do not challenge any of Judge Rumsey's findings—just his authority to make those findings. But we do not find the Mills' arguments to be persuasive, so we affirm Judge Rumsey's decision.

*The Mills argue the probate court did not have jurisdiction to consider and overrule the foreclosure court's order.*

The Mills first contend the probate court could not assert jurisdiction over the disposition of the surplus proceeds because the foreclosure court had already asserted jurisdiction when it ordered those proceeds should be paid to the Mills. Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *Sandate v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 450, 471 P.3d 700 (2020).

The Mills argue Judge Ternes' decision was a final order in the foreclosure action. Thus, they claim Judge Rumsey had no jurisdiction to issue a conflicting order in the

probate court awarding ownership of the surplus funds to someone other than the Mills. But the Mills do not fully appreciate Judge Ternes' order in the foreclosure action. First, the order does not suggest the foreclosure court is exercising exclusive jurisdiction over the disposition of the surplus proceeds. Instead, by stating the funds should be paid out "unless the Probate Court . . . orders otherwise," it defers to the probate court regarding the ownership of the surplus proceeds. By doing so, we take it to mean Judge Ternes acknowledged the probate court had jurisdiction over the disposition of the surplus proceeds when administering the Estate.

The Mills string cite several cases which they contend hold that district courts cannot serve as a "[C]ourt of [A]ppeals" to each other. Not only did this not happen below but the cases the Mills cite address very different situations. For example, *Schaeffer v. Schaeffer*, 175 Kan. 629, 266 P.2d 282 (1954), addressed competing divorce petitions filed by the divorcing spouses in separate counties. The Supreme Court found the district court where the husband had filed (Saline) had jurisdiction over the parties' divorce because the parties had not resided in the county where the wife filed (Dickinson) for the necessary time required by statute. 175 Kan. at 634. The court thus set aside orders issued by the Dickinson court as void for lack of jurisdiction. 175 Kan. at 635.

Similarly, in *Ewing v. Mallison*, 65 Kan. 484, 70 P. 369 (1902), our Supreme Court wrestled with which district court had jurisdiction over the probate of an estate. While it acknowledged the general rule that "in order to avoid conflict between tribunals of coequal authority, that the court first acquiring jurisdiction shall be allowed to pursue it to the end, to the exclusion of others; and that it will not permit its jurisdiction to be impaired or subverted by a resort to some other tribunal" it did not rely on this rule as a basis for its decision. 65 Kan. at 488. Instead, it remanded the case to determine the county of residence of the deceased at the time of his death, since, in Kansas, that is the county with the power to administer the deceased's estate. 65 Kan. at 496. And as explained later in response to Mills' res judicata argument, we are not faced with a

situation where the same parties to the action are being forced to relitigate a decision before another court because one party does not like the first court's ruling or because another forum is more convenient. The parties are different in the foreclosure and probate actions. And they did not litigate the legal right to the surplus proceeds in the foreclosure action.

In *Hepner v. Hepner*, 115 Kan. 647, 223 P. 1095 (1924), another case cited by the Mills, after a wife sued her husband for alimony in Kansas, the husband moved to Oklahoma and filed a separate suit for divorce. He obtained a judgment in Oklahoma before the wife did in Kansas. He then tried to use the Oklahoma judgment to defeat the wife's claim in Kansas. The Supreme Court held the Oklahoma court filing did not divest the Kansas court's jurisdiction. 115 Kan. at 1095. But the Estate is not using rulings in the probate action to defeat or circumvent rulings in the foreclosure action. Judge Ternes deferred to the probate court when issuing his ruling and never ruled the Estate was not legally entitled to receive the surplus proceeds in the foreclosure action.

The Mills cite no legal authority supporting a proposition that the probate court has no subject matter jurisdiction to administer the Estate, which includes determination of its heirs and assets. And indeed, they do not make that argument. Instead, they mistakenly argue Judge Ternes' prior order in the foreclosure case somehow divested the probate court of jurisdiction without citing any pertinent legal authority.

But Judge Ternes did not rule the Mills were legally entitled to the surplus proceeds—he simply ordered that the proceeds could be paid out to them unless the probate court decided differently—which it did. His order recognized the Mills' claim to an interest in the surplus proceeds was conditional and not absolute. And as Judge Rumsey noted in his order, Judge Ternes' order that the surplus proceeds could be paid to the Mills did not answer the question of who was legally entitled to the funds. Judge Rumsey said the Mills could hold the funds pending final disposition—which he pointed

out they represented they would do until the matter was resolved—but the Estate, as the prior owner of the foreclosed property, is legally entitled to the surplus proceeds. Our Supreme Court explained how foreclosure proceeds are distributed in *Fidelity Bank v. King*, 281 Kan. 1278, 136 P.3d 465 (2006): "Under Kansas law, payment to lienholders in order of priority comes directly after payment of costs. Thereafter, any surplus belongs to the debtor in execution." 281 Kan. at 1283 (citing *Blandin's Adm'r v. Wade*, 20 Kan. 251, 255, 1878 WL 889 (1878) ("[T]he proceeds are first applied to the liens, judgments, and costs, and the surplus goes to the judgment-debtor.")). The Estate stands in Lyons' shoes as the debtor in execution or judgment debtor after application of the sale proceeds.

The Mills do not address the merits of Judge Rumsey's ruling. Rather, their argument hinges solely on the fact that Judge Ternes ordered payment of the surplus proceeds to the Mills unless the probate court ordered otherwise "before September 15, 2022," and Judge Rumsey issued his order *on* September 15, 2022. But we do not find this one-day delay to be legally significant. We read Judge Ternes' insertion of a date as a motivating deadline for the parties to resolve the matter—which is unsurprising considering the delays which had already occurred. The record reveals Knopp scheduled a hearing within the deadline, but Mr. Mills requested it be continued. The record also reveals the court suggested other dates—which did include September 13 and 14—but does not explain why those dates were not chosen. Without more explanation or some statutory or other legal basis to find Judge Ternes' deadline binding under these circumstances, we find the Mills have not met their burden to show Judge Rumsey erred by issuing an order on September 15 instead of September 14, 2022.

We also do not find Knopp's delay—while unnecessarily long—in preparing the journal entry to have any legal impact on Judge Rumsey's ruling. The Kansas Supreme Court has noted: "The mere fact the court directs or consents to the preparation of a journal entry is not an order that its judgment is not effective until the journal entry is prepared and filed." *Brown v. Brown*, 218 Kan. 34, 37, 542 P.2d 332 (1975). If the effect

9

of an order is to be delayed, then the court must "clearly and specifically make an order to that effect." 218 Kan. at 38. Judge Rumsey's journal entry does not contain any such language.

*The Estate argues Judge Ternes' order was not binding on it since the Estate was not a party to the foreclosure action.*

The Estate points out that it was not a party to the foreclosure action, so Judge Ternes' deadline was not binding on it. While the Mills claim in their reply brief that the Estate was a party to the foreclosure action, the portion of the record they cite is one of Judge Ternes' orders in which he specifically states the special administrator of the Estate, Vail Fruechting, "is not a party in this matter, does not have standing in this matter, and has not been granted intervenor status by the Court." Danler was the only one who moved to intervene in the foreclosure action—which was denied. The record does not reveal any such motion by the Estate, nor do the Mills cite to one. Thus, the Estate argues Judge Ternes was the one without jurisdiction to adjudicate its interest in the surplus proceeds.

The Estate cites *Butler v. Craig*, 29 Kan. 205, 1883 WL 734 (1883), to support its argument, which we find persuasive. In *Butler*, the lien creditor—Butler—obtained a judgment against defendants Samuel Craig and George Noble. Noble sold real estate to a third party, Harvey Rounsaville, subject to Butler's judgment lien. This real estate was sold at judicial sale to satisfy the judgment and the surplus proceeds were paid into the court. The district court then ordered Noble and Rounsaville—a nonparty—to interplead for the surplus funds. Its order also provided that if Rounsaville failed to interplead within 30 days, the funds would be paid to Noble. On appeal, our Supreme Court held: (1) Rounsaville was entitled to the surplus proceeds since he owned the land at the time of the sale; and (2) since Rounsaville was not a party or privy to a party in the lawsuit, he was not bound by the order of the court requiring him to interplead with Noble for the

surplus proceeds. 29 Kan. at 206-07. The Supreme Court noted the district court acquired no personal jurisdiction over Rounsaville, so its order was not valid as to Rounsaville. 29 Kan. at 207.

The Mills' efforts to distinguish *Butler* are unpersuasive. First, they incorrectly claim the Estate was a party to the foreclosure action through Knopp. But Knopp was an attorney, not a party, and neither of his clients—Danler nor the Estate—was allowed to intervene in the foreclosure action. And while the Mills are correct that they are the purchasers of the property—like Rounsaville—they miss the important distinction that Rounsaville owned the property at the time it was sold to satisfy the judgment lien. This timing makes Rounsaville more like the Estate, because Lyons was the owner of the foreclosed property at the time of the sheriff's sale.

We find *Butler* controlling on both the party entitled to the surplus proceeds—the property owner at the time of sale—and regarding the court's lack of jurisdiction over a nonparty. See also K.S.A. 2023 Supp. 60-254(a) ("A judgment is the final determination of the *parties'* rights in an action." [Emphasis added.]). And while the Mills also complain that the Estate did not appeal Judge Ternes' order, they cite no legal authority suggesting the Estate, as a nonparty to the foreclosure action, could have done so. See *Simon ex rel. Fillenwarth v. Bazzano*, 250 Kan. 673, 675, 829 P.2d 576 (1992) ("In the absence of express statutory authorization, those who are not parties to an action have no standing to appeal.").

*The Mills' assertion of the doctrine of election of remedies ignores relevant facts.*

The Mills next argue the Estate is barred from asserting a claim to the surplus proceeds because Danler's motion seeking payment of the funds to the Estate was denied by Judge Ternes. But Danler was not a representative of the Estate—which is part of the reason her motions in the foreclosure action were denied. Nor have the Mills articulated

which inconsistent remedies they claim the Estate sought. The record reveals the Estate consistently claimed a right to the surplus proceeds in both the foreclosure and probate actions. Judge Ternes' denial of Danler's intervention in the foreclosure action—in part because she did not establish her legal status as a representative of the Estate—does not impact or preclude the Estate's claim (through a proper representative) to the surplus proceeds.

*Judge Termes' order does not satisfy the requirements of res judicata.*

The Mills also argue the doctrine of res judicata voids Judge Rumsey's order. They argue the Estate's claim to the surplus proceeds is the same claim it asserted in the foreclosure action, based on the same facts, parties, and issues which were previously litigated in the foreclosure action.

Whether the doctrine of res judicata applies in a certain case is an issue of law over which appellate courts exercise unlimited review. *Herington v. City of Wichita*, 314 Kan. 447, 450, 500 P.3d 1168 (2021).

Courts will invoke res judicata to bar a successive suit where the following requirements are met: (1) same claim; (2) same parties; (3) claims were or could have been raised in the first suit; and (4) a final judgment on the merits. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). Put differently, res judicata prevents relitigation when the following four conditions coincide: "'(1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made.'" *In re Care & Treatment of Sigler*, 310 Kan. 688, 699, 448 P.3d 368 (2019). It prevents splitting a cause of action into two or more suits. *Shelton v. DeWitte*, 271 Kan. 831, 836-37, 26 P.3d 650 (2001).

We need only address one element of the Mills' res judicata argument—identity of the parties—to show the doctrine does not apply. First, "[p]arties are the 'same' for res judicata purposes when they are in privity with one another." *Jacox*, 302 Kan. at 437. The question of privity requires a careful examination of the circumstances in the case. 302 Kan. at 437. "Before privity can be invoked to satisfy the 'same party' element of res judicata, there must be a showing that 'the parties in the two actions are really and substantially in interest the same.'" 302 Kan. 437-38 (quoting *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 [10th Cir.1989]).

The Mills argue that since Knopp represented Danler in her efforts to intervene in the foreclosure action and set aside the foreclosure judgment, and Fruechting as special administrator of the Estate in the probate action, this satisfies the requirement of the identity of the parties. But having the same attorney is not enough because Danler and the Estate do not share the same interests. Danler did not claim a right to or seek the surplus proceeds—she sought to redeem Lyons' home from foreclosure. And even in her Motion to Payout Funds, she did not ask the court to pay the surplus proceeds to her. She only sought payment for the funds she had paid to try to redeem the home; she asserted the surplus proceeds should be paid to the Estate.

The Mills do not sufficiently explain how the relationship between Danler and the special administrator through the same attorney Knopp met the same party requirement for res judicata purposes. Because the Mills failed to clearly articulate how the same party requirement is met, res judicata cannot be implicated. We need not examine the remainder of the elements to satisfy this doctrine.

CONCLUSION

The Mills have failed to meet their burden to show Judge Rumsey's order was legally void, and they have not challenged its merits. Judge Ternes made no legal

13

determinations in his order as to the Mills' right to the surplus proceeds as compared to the Estate. And the parties' delay in scheduling a hearing in the probate court and in journalizing Judge Rumsey's decision do not alter the legal landscape. Judge Rumsey's order recognized the distinction between a borrower's right of redemption and the right to the remaining foreclosure sale proceeds. The right of redemption is the right a judgment debtor has to regain property he or she has lost by sale under process. *Bucklin National Bank v. Hayse Ranch*, 58 Kan. App. 2d 715, 726, 475 P.3d 1 (2020). But the right to surplus proceeds after a foreclosure sale is a separate issue. The Mills have provided no legal reason why the Estate, which is in privity with the judgment debtor homeowner, is not legally entitled to the surplus foreclosure proceeds. And they provided no legal reason why their purchase price for Lyons' home should be reduced by refunding them a portion of the price they agreed to pay at the sheriff's sale.

In resolving this exceedingly unusual interplay of probate and foreclosure law, we have endeavored to decide only the narrow issues the peculiar facts have necessarily defined.

Affirmed.